Lee, J.
The first and sixth errors which are assigned in this case, are that the suit was brought against Catharine Peale in her character of widow and relict of Bernard Peale, and not as administratrix, and that the decree of the court is several against the appellant, whereas it should have been against him and the said Catharine, jointly. The bill it is true, in naming the parties prayed to be made defendants in the cause, does not specially designate her as administratrix, and in that capacity as well as in that of widow, ask that she be made a party; but it does allege that she and the appellant qualified as administratrix and administrator. The whole assets of the estate came to the hands of the appellant, and he exereised exclusive control over them and disposed of them without interference on the part of the administratrix. It is not pretended that the latter received any part, or that she is liable as for any received and disbursed by her. It is true that having united in the administration bond *444 with the appellant, she would under the decisions of this court in the cases of Morrow's adm'r v. Peyton's adm'r, 8 Leigh 54, and Boyd's ex'ors v. Boyd's heirs, 3 Gratt. 113, be liable as security for the said appellant for any assets received and disposed of by him; yet if the distributees were content to take a decree against him alone for the amounts respectively due them and for which he was liable primarily as principal, surely it is not for him to complain that the decree was surrendered. If Mrs. Peale had been dead, it would not have been necessary to make her representative a party; Wills' adm'r v. Dunn's adm'r, 5 Gratt. 384; nor does it seem to be error to omit her as such, though living, under the circumstances of this case.
Another objection taken by the appellant is, that the decree was rendered without regard to the payments proved to have been made by him to the appellees at different times, and which are thus disallowed by the court. The evidence in relation to such supposed payments is extremely vague and uncertain. Small amounts appear to have been occasionally advanced by the appellant to his sisters or some of them, but they would appear to have been in the nature of gratuities, or it may be were intended as an acknowledgment of and compensation for sewing and other services, which appear to have been cheerfully rendered by them to their brother and his family. It can scarcely be considered that they were intended by the appellant at the times they were made, as payments on account of the distributive shares due them of their father’s estate. He produced no account of any such payments before the commissioner, and it is to be presumed that he kept none, evidently not regarding them himself as matters to be remembered or set up when he came to pay over to his sisters their shares of the estate. The amounts proved are inconsiderable and *445 very imperfectly ascertained, and the appellant took no exception to the commissioner’s report in which the amount for which he was liable according to his ■ mode of stating the account was determined, without allowing him credit for any such payments. Upon the whole, I think that the court was right in disregarding them, and that they were properly disallowed.
An ex parte settlement made by an administrator of his account as such with the court by which he was appointed, though not final or conclusive, is yet prima facie evidence of its correctness till the contrary is shown. It forms no barrier to a bill in equity specifying errors, whether of law or of fact, and impugning the settlement upon that ground. The parties interested may surcharge such a settled account by specifying items for which credit should be given, but which are omitted, or may falsify by pointing out charges improperly made. It is impossible for the administrator, under general charges not specifying errors, to defend himself properly, if the plaintiff may come at the hearing with proof of those errors of which the defendant has before heard nothing. And not only the duty of specifying errors, but also the onus probandi, devolves on the party complaining. The court will take it as a stated account and establish it, unless errors be alleged and proven. 1 Madd. Ch. 103 ; Stoughton v. Lynch, 2 John. Ch. R. 209 ; Nimmo’s ex'ors v. Commonwealth, 4 Hen. & Munf. 57; Atwell's adm'r v. Milton, Id. 253 ; Newton v. Poole, 12 Leigh 112. And if no evidence be exhibited to surcharge or falsify the account, and nothing improper in it is disclosed by the answer, the court will not refer the case, but the bill will be dismissed. Wyllie v. Venable's ex'or, 4 Munf. 369. And it would seem that where specific charges are made, the enquiry will not be. opened beyond the special matter charged, though the' bill may contain a general charge and a prayer for a *446 full account. Consequa v. Fanning, 3 John. Ch. R. 587 ; S. C., 17 John. R. 511. In this case the bill - called for the production of the sale bills and vouchers on which the settlement was made, and asked leave to surcharge and falsify, if errors should appear upon their production; but the only items complained of in the account as it appeared, and which were specified, are the allowance of a commission of five per centum to the appellant, upon the ground, as alleged, that not having made the settlement within the time prescribed by law, he was not entitled to any compensation; and ' the payments made on account of the liability of the decedant as security for one Ragan, a deputy sheriff; the bill alleging that the complainants had been informed, perhaps incorrectly, that the bond on which said liability was founded was not binding upon the estate, and calling upon the appellant to furnish information upon the subject. With regard to the complaint that the commission had been improperly allowed, there seems to have been no foundation for it whatever. The act of the 16th of February 1825, (Supp. Rev. Code 1819, p. 215,) provided,. (§ 8, p. 217,) that it should be the duty of every executor or administrator theretofore appointed to apply to the court to appoint commissioners for the purpose of stating and settling his accounts within two years from the commencement of the act, and also to cause his accounts to be so settled within six months after such order should be procured, on pain of forfeiting all light to commission or compensation for administering scf much of the estate as should not have been settled agreeably to the provisions of that act. By the 12th section, the act of the 19th of February 1823 was repealed, and the law declared thenceforth to be as if that act had never passed. It appears that Bernard Peale died and the administrators qualified in 1818, and the settlement was returned to the court and or *447 dered to be recorded at tbe April term 1827 ; so that it was made within the time prescribed by the act.
With regard to the other supposed error in the account, the allowance of the payments made on account of the liability of the estate for Kagan, the deputy sheriff, it was not directly charged as such, and the bill alleged that the information on which it was suggested might be incorrect, and called on the appellant to give the proper information in regard to it. He did so in his answer, stated that he made the proper defence, but the court had decided against the estate, and what he had paid he was compelled to pay under the adjudication of the court; and there was no evidence upon which to question the correctness of his answer upon this subject. I think, therefore, that the order of reference made on the 15th of May 1849 was perhaps too broad in giving the complainants the right to surcharge and falsify generally the settlement of July 1826 before the commissioner, and that the settlement and account which he was directed to make should have been restricted to the correction of any errors apparent on the face of the former settlement, and the bringing into the account the matters which were admitted in the appellant’s answer not to be embraced in it. But this is not material, because the commissioner, to whom the case was referred by the court, has not exceeded the limits within which, as I think, the power of correcting the settlement of 1826 might be properly exercised; and has, by his mode of stating the account, ascertained an amount to be due the estate from the appellant, not varying much from that of the commissioner of the County court, in the settlement of July 1826; and to this report no exception whatever has been taken. I think, therefore, the balance ascertained to be due on the 1st July 1826 by commissioner Tams, was properly adopted by the court as the basis of the decree which it pronounced.
*448 It is contended by the appellant, however, that the matter in controversy between himself and the complainants was adjusted by an agreement made in 1840, that each would receive the sum of 250 dollars in full of her distributive share when she left the family; and he relies upon the deposition of Samuel Newman as fully establishing this agreement. It appears, however, that Newman was the security in the administration -bond; for although that bond is not exhibited, nor the fact of his suretyship directly proven, yet when an exception is taken to his testimony, and that reason assigned, a formal response is filed to the exception by the appellant’s counsel, in which the fact of such suretyship is not denied or questioned; but a reason suggested why he was not thereby disqualified as a witness. So that it must be taken as admitted that he was in fact such surety, and his testimony is excepted to as that of a witness interested and incompetent. It is answered, however, that the settlement was made in 1826, and that Evelyn, the youngest child, became of age in 1837, and thus that more than ten years had elapsed since the cause of action had accrued, and since the youngest child became of age, and therefore that Newman would be protected by the statute of limitations against any liability on the administration bond, and is therefore no longer interested, and his competency as a witness is restored. I do not deem it necessary, however, to stop to consider this point, because I do not regard the testimony of this witness as satisfactorily establishing such an agreement as that contended for. It is vague and indefinite., proving rather a conversation and discussion in relation to the matter, than any formal or positive agreement, and one of the appellees, Mrs. Hickle, the witness himself states, was not present, though he understood she was either in the house or expected there; and, indeed, there is no sufficient consideration shown *449 for such an agreement, had it been more clearly shown, to make it binding upon the appellees. I dismiss it, therefore, without further consideration.
The last question to be considered is that of the allowance of interest on the distributive shares, and from what time. It appears very manifest that -the family remained, and were kept together after the death of Bernard Peale, by the mutual understanding and consent of all the children as soon as they successively became old enough to take thought on the subject, and for the common benefit and advantage of all, in conformity to the wish to that effect expressed by the father in his last illness. The appellant being the oldest son, and perhaps the only child that was of age at the death of the father, naturally became the head of the family, subject to the advisory influences of the mother, and he seems to have stood in loco parentis towards his sisters as long as they remained united and in harmony. Under his care and good management an estate of inconsiderable value was made to yield ample means for the comfortable support of quite a large family.' The sisters were most carefully tended, raised and educated through his kind and generous provision for them, doubtless aided by the affectionate care of their excellent mother. They appear to have been denied nothing that was necessary for them health, comfort and happiness, and nothing that was required by their associations or the customs of the highly respectable circle in which they moved. Ample provision was made for their wardrobe, and that it should be such as was proper and becoming. Unlimited credit was given them upon the appellant’s account at the stores in which he dealt, and the accounts were paid without any objection being made to their amount; and presents were made them from time to time by their brother, in articles useful or agreeable to them. Ample provision was made to enable them to *450 visit their friends and acquaintances at pleasure, and to receive and entertain their company in a hospitable and becoming manner. All this was done, or very nearly so, out of the products of the industry, skill and judicious management of the appellant; for their mother had very little means to spare to be applied to their support. Indeed, it would seem that her share of the personal estate of her husband must have been mainly expended in the construction of the house which she built, or at least a large portion thereof was so applied. It is undoubtedly true, as shown in evidence in the cause, the appellant’s sisters were very meritorious girls, economical, thrifty and industrious, and that while he was discharging the duties of a good brother towards them, and supplying the place of their deceased father to the full measure of his ability, they, on their part were by no means remiss in the performance of all the kind offices, and rendering all the services due from them as affectionate sisters and members of one family. They no doubt did good service, and gave their brother and his family much necessary and valuable aid in the economical arrangements of the household. But it can hardly be thought that six girls could be at the same time usefully or profitably employed in a family not larger than that of the appellant, and most or much of their time was no doubt spent in work for their own use, or to gratify their own fancy and taste. It is very clear they never stood on the footing of hired girls, but were in all respects treated as cherished members of the family, with all the rights and privileges as such, and with all the comforts which they probably would have enjoyed if their father had lived.
After a careful perusal of the testimony in the case, voluminous as it is and embracing somewhat conflicting opinions and varying estimates of different witnesses, I cannot resist the conclusion that, considering *451 the manner in which the sisters were raised, educated and maintained by their brother, it cannot be an unreasonable pretension on his part to claim that he should be allowed the modicum of interest on their shares of the personal estate, and their portion of the rent of the farm and tan-yard, and the hire of the two slaves over and above the services rendered by them ■in the family, whilst they remained with and were supported by him; and that during that period, he ought not to be charged with interest upon their distributive shares of the personal estate.
I am of opinion therefore that the court erred in giving interest on the distributive shares of the appellees from the date of the settlement in July 1826, but that each share (without discriminating between principal and interest) should bear interest from the time at which the appellee ceased to remain with and to be supported by the appellant, which, as well as I can determine from the record, was about the 1st of July 1846; and that therefore the decree of the Circuit court should be reversed with costs to the appellant, and a decree now entered in favor of each of the four appellees, Hickle and wife, Amanda M., Caroline and Evelyn B. Peale, for the sum of 350 dollars 54 cents, with interest thereon from the 1st day of July 1846, till paid; and that the cause should be remanded to the Circuit court to dispose of the question of costs reserved by that court, and also the report of the commissioners appointed to assign the widow’s dower and divide the real property among the heirs.
The other judges concurred in the opinion of Lee, J.
The decree was as follows:
The court is of opinion that the Circuit court erred in giving interest upon the distributive shares due the appellees, George Hickle and wife, Caroline Peale, *452 Amanda M. Peale and Evelyn B. Peale, from the appellant, as administrator of the estate of Bernard Peale, from the 1st of July 1826, the time of the settlement hy the appellant of his account as such administrator as aforesaid, with the commissioner appointed by the County court of Kockingham for that purpose; and that in lieu thereof, it should have allowed interest on the gross ^amount of each distributive share, (without discriminating; between principal and interest,) from the time .at which the said appellees ceased to reside with and to be supported by the ■appellant, which time may be assumed to be the 1st of July 1846.
Therefore it is adjudged, ordered and decreed, that the said decree be reversed and annulled so far as it relates to the amounts required to be paid by the appellant to the appellees,. Hickle and wife, Caroline, Amanda M. and Evelyn B. Peale, with interest thereon as aforesaid, and that the said appellees do pay unto the appellant his costs by him in -the prosecution of his appeal in this court expended. And this court, proceeding to pronounce such decree touching .the matter aforesaid as the said Circuit court ought to have rendered, it is adjudged and ordered that the appellant do pay to the appellees, Hickle and wife, the sum of 350 dollars 54 cents, with legal interest thereon, from the 1st day of July 1846 till paid; that said appellant do pay to the appellee, Caroline Peale, the sum of 350 dollars 54 cents, with legal interest thereon, from the 1st day of July 1846 till paid; that the appellant do pay to the appellee, Amanda M. Peale, the sum of 350, dollars 54 cents, with legal interest thereon, from the 1st day of July 1846 till paid, and that the appellant do pay to the appellee, Evelyn B. Peale, the sum of 350 dollars 54 cents, with legal interest thereon, from the 1st day of July 1846 till paid. And it is further adjudged and ordered that in all other things *453 the said decree be affirmed. And this cause is remanded to the said Circuit court, that it may dispose of the question of costs reserved by it until the final decision of the cause in the said Circuit court, and for such action as may be necessary and proper in the premises growing out of so much of said decree as relates to the assignment of dower to the widow, and the partition of the real estate of the said Bernard Peale among his heirs at law, and for further proceedings .therein to be had. Which is ordered to be certified to the said Circuit court.